IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PAULA WILLIAMS                                              PLAINTIFF

v.                          No. 3:11-cv-138-DPM

SUNTRUST BANKS INC. and
BRIAN LAMB                                              DEFENDANTS

### ORDER

Paula Williams was a Regional Operations Manager for Suntrust Banks

for about four years. *№ 31 at 1.* Her job was to police compliance with

Suntrust's internal operational controls at Suntrust retail branches to prevent

losses due to fraud or theft. *Ibid.* She lost her job in June 2010, about a month

after she returned from FMLA leave.  Suntrust says it fired her because the

manager who filled in for her found that Williams had allowed two control

violations at one branch to persist, omitting the violations from her required

and critical quarterly Key Operational Control Activity reports.  Williams

claims that she was in fact fired for taking FMLA leave and because her

medical conditions left her disabled.  Suntrust and Brian Lamb, the bank

supervisor who recommended letting Williams go, have moved for summary

-1-

judgment.

Interpreting the genuinely disputed facts more favorably to Williams, *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*), she has made a strong *prima facie* case that she was terminated in retaliation for taking FMLA leave. Williams worked for Suntrust for almost twenty years. № *25-2 at 109* (transcript pagination). In her last few years at the bank, she took a lot of FMLA leave—about six weeks beginning November 2007, about four weeks beginning April 2008, and about ten weeks beginning March 2010. № *31 at 9 ¶ 40*; № *25-2 at 67-68*. She took leave the last time because she crushed her arm in a fall, requiring metal implants, surgery to remove them, and efforts to address post-surgical infections. № *25-2 at 110-114*.

Williams fell during a busy time for Suntrust: She had worked thirty straight hours, № *25-2 at 110*; and it was the twelfth day of a nineteen-day schedule that included no days off, even Saturdays and Sundays. *Ibid.* While she was out, Lamb called her asking with an exasperated tone when she would be back at work. № *25-2 at 112-113*. Suntrust's employee in charge of FMLA also called to ask when Williams would be coming back. № *25-2 at 116*.

-2-

Lamb recommended termination after discussing with Williams her positive annual performance review, № 31 at 11 ¶ 48, at the end of which he gave her a raise. № 25-2 at 92. He says the control violations were discovered after the report period, and thus not embraced by this review. Closing the discussion, Lamb told Williams he would have to talk to HR about the control violations. The next day he did, and recommended termination. Williams was shocked when Lamb told her that afternoon that she was losing her job. № 25-2 at 96.

Suntrust offers a sufficient nondiscriminatory reason to meet its burden under the *McDonnell Douglas* framework. Williams admitted knowing about and not reporting two control violations. Suntrust says the second violation — not reporting that two Humphreys branch employees had worked out of the same cash box — was serious. But the circumstances of Williams's firing present a fact issue on pretext. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084 (8th Cir. 2013). Williams received a favorable review immediately before she was terminated. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006) (receiving a favorable review shortly before termination can show pretext). The two branch employees who committed the control violations

that Williams failed to report were not punished at all. This circumstance is

not determinative, because these employees were not situated exactly like

Williams; but the lack of discipline to others involved could support a

reasonable inference that the two problems Williams didn't report were not

as serious as Suntrust said. "An employee can demonstrate pretext by

showing that it was unlikely an employer would have acted on the basis of the

proffered reason." *Ridout*, 716 F.3d at 1084 (quotation omitted); *see also Marez*

*v. Saint–Gobain Containers, Inc.*, 688 F.3d 958, 964 (8th Cir. 2012).

Suntrust argues hard that it should prevail as a matter of law at the

pretext stage because Williams lacks comparators. *E.g., Rodgers v. U.S. Bank,*

*N.A.*, 417 F.3d 845, 853–54 (8th Cir. 2005), *overruled in immaterial part by*

*Torgerson*, 643 F.3d at 1043. A comparator outside the protected class must be

"similarly situated in all relevant respects," having been "subject to the same

standards, and engaged in the same conduct without any mitigating or

distinguishing circumstances." *Muor v. U.S. Bank Nat. Ass'n*, 716 F.3d 1072,

1077-78 (8th Cir. 2013). Besides Williams, Brian Lamb disciplined two

Regional Operations Managers he directly supervised. *№ 25–3 at 34.* Pam

Roach was one. In 2010 she negligently performed a surprise cash count that,

-4-

if conducted properly, should have uncovered theft by a teller and prevented an actual loss to Suntrust. *№ 25–3 at 52.* Correctly conducting the surprise cash count is a key operational control activity, just like accurately doing the critical reports Williams botched. *№ 25–3 at 52.* This conduct was of comparable seriousness. *Harvey v. Anheuser-Busch Inc.*, 38 F.3d 968, 972–73 (8th Cir. 1994) (quotation omitted). Lamb gave Roach a warning. *№ 25–3 at 37-38.*

Suntrust argues that Roach does not qualify as a comparator because she engaged in the same protected activity as Williams—she had taken FMLA leave. Indeed, the Court of Appeals has repeatedly said that a retaliation plaintiff can demonstrate pretext by showing that "the employer meted out more lenient treatment to similarly situated employees who were not in the protected class, or as here, who did not engage in protected activity." *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 874 (8th Cir. 2008) (quotation omitted). But the Court has been unable find a case where a retaliation claim rose or fell on whether a proposed comparator had engaged in protected activity or not. In *Marez v. Saint-Gobain Contractors, Inc.*, for example, the Court of Appeals relied in part on inconsistent discipline of comparators and upheld a jury

-5-

finding of FMLA retaliation though "neither party presented evidence whether any other [comparator] had ever requested or taken leave under the FMLA." 688 F.3d at 962, 964.

This is an instance where "[w]e must think things not words, or at least constantly translate our words into the facts for which they stand, if we are to keep to the real and the true." O.W. Holmes Jr., "Law in Science and Science in Law," 12 HARV. L. REV. 443, 460 (1899). The substance of the comparator inquiry is to isolate situations where the protected activity, such as taking FMLA leave, can reasonably be inferred to have been a motivating favor in discipline because all other material circumstances are much the same. In those situations, whether the protected conduct motivated the adverse employment action is for the jury.

*When* Roach took her FMLA leave, and *how much* leave she took, make a legal difference. Lamb hazarded in his deposition that Roach had taken "maybe four to six weeks" of FMLA leave in the two or three years before his deposition. № 25-3 at 56. Taking the record in Williams's favor, this was quite wide of the mark. Suntrust's HR consultant, who keeps up with such things to the day, said that Roach took thirteen days of leave in May 2007. № 32-1.

-6-

That leave was at least two years before her faulty cash count. Compare Williams, who took about twenty weeks leave across those three years. And Williams's longest leave—ten weeks—ended a month before her firing. In terms of both timing and amount, then, Roach's leave should not disqualify her from being compared with Williams.

Though Roach had engaged in the same protected activity as Williams, she is nonetheless properly considered a comparator at the pretext stage. The cases discussing a plaintiff's *prima facie* retaliation case hold that, as common sense would dictate, any inference of retaliation evaporates as more time passes between the protected activity and the adverse employment action. *E.g.*, *Marez*, 688 F.3d at 963. By the same principle, an otherwise similarly situated employee's stale history of protected activity should not disqualify her as a comparator. Without deciding how stale is stale enough, the more than two years between Roach's FMLA leave and her serious and similar infraction suffices. So too on the amount of protected activity. Thirteen days of FMLA leave across roughly three years is *de minimis* in comparison to twenty weeks of leave during the same period. Considering all the facts for which the word comparator stands, Roach qualifies.

-7-

Add five things to this proof about a manager's different discipline for a similar policy violation: Williams's hectic work schedule immediately before her fall, the exasperated phone call from Lamb, her contemporaneous raise-prompting review for 2009, her extensive leave history, and the lack of any discipline for the tellers whose hands were in the same cash box. The sum is a jury question on FMLA retaliation.

Williams does not defend her ADA claim. And in light of her admission that she did not seek accommodation, № 25-2 at 118-19, the Court concludes she concedes that claim.

*  *  *

Motion for summary judgment, № 24, granted as to Williams's ADA claim and otherwise denied.

So Ordered.

_DPMarshall Jr._

D.P. Marshall Jr.
United States District Judge

_23 July 2013_

-8-